# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 7, 2011

No. 10-20141

Lyle W. Cayce
Clerk

MICHAEL LEE WILLIAMS,

Plaintiff–Appellant,

v.

SERGEANT VALENTI; LUKER, Captain; CAPTAIN BREWER,

Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:07-CV-4063

Before SMITH, WIENER, and OWEN, Circuit Judges.

PER CURIAM:[*]

Michael Lee Williams, Texas Prisoner # 513998, brought this pro se action under 42 U.S.C. § 1983, alleging violations of the Eighth Amendment arising out of an altercation with Sergeant Anthony Valenti, a prison guard. We affirm the district court's grant of summary judgment in favor of the defendants.

**I**

After Williams and Valenti were involved in an altercation outside the prison medication center, Williams filed this § 1983 suit against Valenti and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-20141

Captains Luker and Brewer.  The defendants moved for summary judgment based on qualified immunity, and the district court granted summary judgment in their favor.  The court determined that Luker and Brewer did not participate in the use of force against Williams, and that Valenti did not use constitutionally impermissible force.  Williams timely appealed.

## II

We first address Williams's Eighth Amendment excessive force claims.  We undertake a "two-pronged analysis to determine whether a government official is entitled to qualified immunity, inquiring: (1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct."[1]  We may exercise "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[2]   In this case, we find it appropriate to determine initially whether a constitutional violation occurred.

We review de novo a district court's grant of summary judgment on qualified immunity grounds,[3] "using the same standard as that employed by the district court under Rule 56."[4]  "Summary judgment is warranted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[5] "There is no genuine issue for trial if the record, taken as a whole, could not lead a rational trier of fact to find for

---

[1] *Jennings v. Patton*, - - - F.3d - - - -, 2011 WL 2420086, at *3 (5th Cir. June 17, 2011) (citing *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009)).

[2] *Pearson*, 129 S. Ct. at 818.

[3] *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).

[4] *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (internal quotation marks and citation omitted).

[5] *Id.* (quoting FED. R. CIV. P. 56(a)).

No. 10-20141

the non-moving party."[6]  "We review evidence in the light most favorable to the nonmoving party, but conclusional allegations and unsubstantiated assertions may not be relied on as evidence by the nonmoving party."[7]

## A

The district court granted summary judgment in favor of Luker and Brewer because they did not participate in the use of force against Valenti. Williams does not challenge this ruling on appeal, thereby waiving his claims against those defendants.[8]

## B

Williams contends that Valenti violated his Eighth Amendment rights by using excessive force to restrain him.  To state a valid Eighth Amendment excessive force claim, Williams "must show that force was applied not 'in a good faith effort to maintain or restore discipline,' but rather that the force complained of was administered 'maliciously and sadistically to cause harm.'"[9] We look to five nonexclusive factors to determine this: (1) the need for the application of force; (2) the extent of the injury suffered; (3) the relationship between this need and the force claimed to have been used; (4) the threat reasonably perceived by the officials; and (5) efforts made to temper the severity of a use of force.[10]

In granting summary judgment in favor of Valenti, the district court relied on an incident report contained in the prison's use of force documentation.

---

[6] *Id.* (internal quotation marks, citation, and brackets omitted).

[7] *Id.* (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

[8] *United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) ("It has long been the rule in this circuit that any issues not briefed on appeal are waived.").

[9] *Rankin v. Klevenhagen*, 5 F.3d 103, 107 (5th Cir. 1993) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

[10] *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998).

No. 10-20141

Williams did not challenge the competency of the incident report, submitted under a business records affidavit, in the district court or in this court.[11] That report stated, in relevant part:

> On June 28, 2007 at approximately 0410 Hours a Use of Force occurred in the corridor in front of the Infirmary entry door between Sgt. Anthony Valenti and Offender Williams . . . . Prior to the Use of Force, Offender Williams . . . was medicated at pill window then ordered several times to leave after receiving the appropriate medication. Offender Williams refused to leave the pill window arguing loudly with Medical Staff that he did not receive his medication. After several orders to leave the pill window, Offender Williams walked from the pill window to the Infirmary without authorization to do so. Sgt. Anthony Valenti was advised of what transpired [as he entered] the Infirmary to escort Offender Williams out of the Infirmary. Offender Williams continued to argue and yell[] that he wanted his medication. Sgt. Valenti ordered the offender to exit the Infirmary and Offender Williams complied. Due to Offender Williams[']s] continuous . . . yelling[,] Sgt. Valenti ordered the offender to place his hand[s] behind his back and said Offender refused to comply. Sgt. Valenti grasped for the offenders' [sic] right arm at which time Offender Williams pulled away. Sgt. Valenti immediately grabbed Offender Williams's shirt pushing him down to restrain [him] on the floor. Sgt. Valenti attempted to place Offender Williams[']s] hands behind his back but was unable to do so due to the offender resisting. Sgt. Valenti struggled with Offender Williams at which time the sergeant believed his life to be in danger. Therefore, the sergeant proceeded to hit the offender with a close[d] fist (2) two times in [the] right side of [his] face. Sgt. Valenti was still unable to restrain the offender's hands behind his back. Sgt. Valenti then hit the offender (4) four more times in the facial area.

---

[11] *See Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 650 n.3 (5th Cir. 1992) ("We note that the admissibility of evidence on a motion for summary judgment is subject to the same standards and rules that govern admissibility of evidence at trial. None of the parties objected to or challenged the admissibility of the Donagheys' proffer of the letters and an investigation report accompanying their memorandum, and accordingly, we find that any objections to them are waived." (internal citations omitted)).

4

No. 10-20141

The report indicates that, with the help of another prison guard, Valenti was able to restrain Williams shortly after hitting Williams with his fist.

Williams submitted no summary judgment evidence other than his sworn complaint, which does not raise an issue of fact concerning whether the use of force was necessary. In the complaint, Williams states:

> Sgt Valenti came to me after I came out of the infirmary talking about my seizure medication. He told me to face the wall. I did and put my hands behind my back. I ask him why [sic]. He pull me off the wall and start beat me [sic]. I beg him to stop he never stop [sic]. He step on my head and nobody try to stop him [sic].

At most, there is an issue of fact concerning whether Williams faced the wall and placed his hands behind his back. Williams's complaint does not contradict other critical aspects of the incident report. Williams does not contest that he entered the Infirmary without authorization, was belligerent, and resisted Valenti's efforts to restrain him. Specifically, Williams does not dispute that he pulled away from Valenti when Valenti grasped his arm, or that Valenti initially only pushed him to the floor using Williams's shirt. Williams also does not dispute the very fact that made the further use of force necessary—that after Valenti pushed him to the floor, he continued to resist restraint. With these aspects of the altercation uncontradicted, a rational trier of fact could not determine that the use of force was unnecessary. On this record, we conclude that there is no evidence that Valenti used force maliciously and sadistically for the purpose of causing harm. Accordingly, Williams's Eighth Amendment excessive force claim fails.

We note that the record contains statements by two prisoners, Bruce Crayton and James Ray, who witnessed the altercation between Williams and Valenti. The statements, like the use of force incident report, are contained in documentation submitted to the district court by the defendants. They were not submitted by Williams. The district court does not appear to have considered

5

these statements by the two prisoners. Had they been competent summary judgment evidence, a matter we do not decide, and had they been considered, the statements may have demonstrated an issue of fact concerning the necessity of applying force. We have said, however, that "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[12] Instead, the "party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim."[13] Thus, "'[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.'"[14]

As the district court noted, Williams submitted no formal response to the defendants' motion for summary judgment. Nevertheless, the district court considered several of the numerous letters Williams submitted to the court that appear to address issues pertaining to that motion. We have reviewed those letters, and the only passage possibly relevant to the prisoner witness statements is the following:

> Now I see why they do not want me to see the D.V.D. I read the motion for a Summary Judgment. The D.V.D. is very important Capt. Siringi yelled stop three time the video camera [sic]. Whats [sic] it a real mistake or a [sic] excuse stop seeing the beaten [sic].
> Please all statements from the employees are the same. They have to because the death of Cox on this unit. Why only two

---

[12] *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal quotation marks and citation omitted).

[13] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *see also Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988) (noting as incorrect the proposition "that the entire record in the case must be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered").

[14] *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004) (quoting *Malacara*, 353 F.3d at 405).

No. 10-20141

inmates to 8 employees?  One thing for sure those two inmates are right and 8 is very wrong [sic].  You have to go through and see my right eye is mess up [sic].  I which [sic] you could had [sic] seen the knots on my head.  Valenti said he did hit me in the head.  Why medical said no injury? [sic]  Valenti did not have cuff you got to read through those statement [sic].

A jury trial should be call for [sic].  Brewer did hit me right in front of a nurse.  Lt. Jackson lied.  I did talk to him and Capt. Siringi at the same time about Valenti.

We are cognizant that pro se briefs are to be interpreted liberally and afforded "all reasonable inferences which can be drawn from them."[15]  We cannot reasonably infer, however, that the quoted passage apprised the district court of the existence or contents of Crayton's and Ray's statements.  Given our clear rule that the district court is not required to search the record in support of evidence supporting a party's opposition to summary judgment, we will not reverse that court because it did not do so in this case.

The evidence properly before the district court demonstrates that Valenti did not violate Williams's constitutional rights.  Valenti is therefore entitled to qualified immunity on Williams's excessive force claim.

## III

Williams also contends that he was denied adequate medical care.  He did not advance this claim in his district court complaint and did not address it in his notice of appeal, which references only the altercation with Valenti.  Rather, Williams asserted his medical-care claim for the first time in a motion filed in the district court in January 2010, long after the defendants had filed their

---

[15] *Tex. Comptroller of Pub. Accounts v. Liuzza (In re Tex. Pig Stands, Inc.)*, 610 F.3d 937, 941 n.4 (5th Cir. 2010).

motion for summary judgment. The district court did not address this tardy claim, and we decline to address it for the first time on appeal.[16]

We likewise do not rule on Williams's claim that his medical records were improperly sealed. Williams has provided no argument that the medical records were improperly sealed, and we emphasize that the sealing of a record does not preclude us from examining its contents.

Finally, Williams contends that a lawyer should have been appointed to represent him pursuant to § 504 of the Rehabilitation Act and the Americans with Disabilities Act. We conclude that Williams has waived this claim due to inadequate briefing, as we have recognized that when an appellant fails to provide "the reasons he deserves the requested relief with citation to the authorities, statutes and parts of the record relied on," that failure constitutes waiver.[17]

*    *    *

The judgment of the district court is AFFIRMED.

WIENER, Circuit Judge, concurs in the judgment only.

---

[16] *Nunez v. Allstate Ins. Co.*, 604 F.3d 840, 846 (5th Cir. 2010) ("An argument not raised before the district court cannot be asserted for the first time on appeal." (internal quotation marks and citation omitted)); *see also C. A. May Marine Supply Co. v. Brunswick Corp.*, 649 F.2d 1049, 1056 (5th Cir. July 1981) (per curiam) ("Where the appellant notices the appeal of a specified judgment only or a part thereof, however, this court has no jurisdiction to review other judgments or issues which are not expressly referred to and which are not impliedly intended for appeal.").

[17] *Turner v. Quarterman*, 481 F.3d 292, 295 n.1 (5th Cir. 2007) (quoting *Hughes v. Dretke*, 412 F.3d 582, 597 (5th Cir. 2005)); *see also* FED. R. APP. P. 28(a)(9)(A) (requiring an appellant's argument section to contain her "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").